
Justin Lonergan
Carter L. Powers-Beggs
601 W. Riverside Ave., Ste. 900
Spokane, Washington 99201
509.624.7606
Attorneys for Hector Saul Iraheta-Mercado

United States District Court
Honorable Mary K. Dimke

| United States of America, | No. 2:25-cr-00116-MKD-1 |
|---|---|
| Plaintiff, | Motion in Limine/Motion for Miscellaneous Relief – Scope of Administrative Warrant |
| v. | |
| Hector Saul Iraheta-Mercado, | |
| Defendant. | With Oral Argument February 4th, 2026, at 10:00 a.m. (Spokane) |

# I.  Summary

At trial, Mr. Iraheta-Mercado intends to argue that, *inter alia*, Officers Waite and Johnson exceeded the authority conferred by administrative warrant.  This evidence creates several issues for the jury's exclusive resolution.  The first issue for the jury is whether Mr. Iraheta-Mercado acted in self-defense or defense of others in response to unlawful force by the officers.  The second issue is whether the officers were engaged in the performance of their official duty when Officer Waite physically reached into Mr. Iraheta-Mercado's car.  This action led to Mr. Iraheta-Mercado rolling up his window, causing Officer Waite's arm to be caught.

These issues require the jury be properly instructed, which in turn requires preliminary resolution of the legality of the officers' conduct.  Specifically, Mr. Iraheta-Mercado challenges two[1] related aspects of the agents' behavior:

(1)  The officers' assertion that Mr. Iraheta-Mercado ignored a "lawful order" to exit his vehicle; and

---

[1] Mr. Iraheta-Mercado respectfully reserves the right to supplement as to whether the agents had authority to even stop his vehicle.  The governing ICE policy requires that agents receive approval to conduct a vehicle stop.  The defense has requested discovery from the United States as to whether the agents had approval in this case.

(2) DO Waite physically reaching his arm into Mr. Iraheta-Mercado's vehicle after Mr. Iraheta-Mercado did not immediately exit his car.

On the first point, a ruling and corresponding jury instruction is necessary because the officers' administrative warrant conferred no legal authority to compel an arrestee to exit a constitutionally protected space, such as a vehicle. On the second point, a ruling and jury instruction are necessary because the officers' administrative warrant conferred no authority to physically intrude into a constitutionally protected space. The United States cannot demonstrate the agents' actions were authorized by the Fourth Amendment to the Constitution, statute, or even DHS/ICE policy.

As such, Mr. Iraheta-Mercado requests the following special instructions so the jury is not misled or forced to evaluate legal issues:

1. An administrative warrant is not issued by a judge, but is instead issued by a designated immigration officer.

2. A valid administrative warrant (I-200) does not authorize immigration officers to enter an arrestee's residence or anywhere else a person has a reasonable expectation of privacy, without consent.

3. An individual has a reasonable expectation of privacy in his or her vehicle.

4. As a matter of law, Mr. Iraheta-Mercado had no legal duty under federal law to exit his vehicle upon Officer Waite's or Johnson's request.

5. As a matter of law, Officer Waite exceeded the authority of the administrative warrant by reaching into Mr. Iraheta-Mercado's car.

## II. FACTS

On June 25, 2025, an immigration officer by the name of "M. Olson" issued a DHS Form I-200, *Warrant for Arrest of Alien,* directed at Mr. Iraheta-Mercado. *See* Exhibit A. As is typical, the administrative warrant does not show any indication of judicial review. The warrant is addressed "to" "any immigration officer authorized […] to serve warrants of arrest for immigration violations[.]" *Id.*

On June 26, 2025, Deportation Officer (DO) Andrew Johnson conducted surveillance at Mr. Iraheta-Mercado's last known residence. *See* Exhibit B, I-831, pg. 2. He observed a car registered to Mr. Iraheta-Mercado. *Id.* On July 8, 2025, DO Johnson again conducted surveillance at Mr. Iraheta-Mercado's last-known residence. He observed Mr. Iraheta-Mercado leave the house in his vehicle. DO Johnson radioed DO Jaime Waite for assistance.

The officers executed a vehicle stop in the Wenatchee area. There is no evidence that Mr. Iraheta-Mercado violated any traffic law prior to the stop. *Id.* The officers claim they identified themselves as police, although no objective evidence (e.g.

video or audio) corroborates this. After examining Mr. Iraheta-Mercado's license, the officers claim they gave a "command," in English, to exit the vehicle. Mr. Iraheta-Mercado (who does not speak English) did not exit.

The officers claim that because Mr. Iraheta-Mercado "disregarded a lawful order to exit the vehicle, DO Waite reached into the vehicle and attempted to open the driver side door." *See id.* at pg. 2. The officers claim Mr. Iraheta-Mercado rolled up his window, which "pinned" DO Waite to the side of the vehicle. *Id.* This is the alleged assault.

The situation quickly deteriorated when the officers drew their agency firearms. Under the current posture, that escalation and any subsequent conduct by DO Waite or Johnson are not relevant to this motion at this time.

### III.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *See* U.S. Const. Amd. IV.

"Nonjudicial arrest warrants are unusual in the world of federal law enforcement." *See* 73 STANLR 433, 453, Nash, L., *Deportation Arrest Warrants*,

Stanford Law Review (2021).  As noted in the cited article, "the question whether these law-enforcement-issued warrants alleviate the Fourth Amendment concerns that arise from these arrests is now enormously consequential both for the subjects of these warrants and for a major component of the immigration-enforcement regime."  *Id.* at 437.  Presciently, the author notes significant concern that "DHS-issued warrants are styled much like ordinary warrants within the meaning of the Fourth Amendment, and, at times, DHS officers purposefully elide the distinction."  *Id.* at 449.

ICE's authority to issue warrants traces back to federal statute and an implementing regulation.  *See* 8 U.S.C. §1226(a)[2]; *see also* 8 C.F.R. §236.1(b).[3] Neither the statute nor the regulations outline the scope of officers' authority to

---

[2] "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed[.]"

[3] "At the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I–200, Warrant of Arrest. A warrant of arrest may be issued only by those immigration officers listed in § 287.5(e)(2) of this chapter and may be served only by those immigration officers listed in § 287.5(e)(3) of this chapter."

execute an immigration arrest.  For example, the statute does explicitly authorize the use of force, entry into homes or cars, or pursuit.  *See id.*

To be clear, *nothing* stops ICE from getting a judicial warrant.[4]  ICE's training materials recognize that the Fourth Amendment is a limit on its authority:



*See* Exhibit C, *Fourth Amendment Training*[5].

---

[4] Citing no authority, ICE has taken the position in a 2020 letter "to the American Public" that "[i]n fact, no judge in this country has the authority to issue a warrant for a civil immigration violation."

[5] This exhibit is an excerpt of voluminous agency materials filed in *Kidd v. Mayorkas*. 734 F.Supp. 3d 967, 978 (C.D.Ca. 2024).  The *Mayorkas* CM/ECF case number and docket entry have been preserved should reference be needed to the entire filing.

Recent caselaw erodes incorrect assumptions about the authority that an administrative warrant provides. In *Mayorkas*, for example, the District Court for the Central District of California thoroughly assessed ICE's "knock and arrest" practice, by which officers would enter a home's curtilage for the purpose of executing an administrative warrant. 734 F.Supp. 3d at 978. The Court made clear that the issue was not "whether the arrest itself is authorized." *Id*. at 978-979 ("consistent with the Fourth Amendment, immigration authorities may arrest individuals for civil immigration removal purposes pursuant to an administrative warrant issued by an executive official, rather than by a judge"). The issue was *what agents could do to effect the arrest absent a judicial warrant*.

The Court turned to whether the immigration warrant, even if valid, was enough to *enter* a constitutionally protected space. The answer was no. *Id*. at 980. ("an administrative warrant is insufficient to enter the constitutionally protected areas of a home") Importantly, the Court did not just stop with the United States' concession that "[it] 'will not argue or claim' that an administrative warrant provides legal authority 'to enter a residence or other location in which an individual has a reasonable expectation of privacy[.]'" *Id*. at 978. Rather than dodging the issue on that concession, the Court contrasted the substantive difference between an administrative warrant and a judicial warrant. *See id*. at 979

("a judicial 'arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling […] when there is reason to believe the suspect is within'").  The Court found too many distinctions between a judicial warrant and an administrative warrant to conclude that an administrative warrant enjoyed the same enforcement authority.  *Id.*  As such, the administrative warrant did not give the agents the authority to enter a home's curtilage to make an arrest.

The broader significance in *Mayorkas* is that an administrative warrant is still subject to constitutional restrictions.  For whatever may have been assumed or simply not argued for years,[6] the scope of an administrative warrant issue is front and center in this case.

Applying the Fourth Amendment as the starting point, as the Court did in *Mayorkas*, we begin with the well-recognized principle that a person has a reasonable expectation of privacy in their vehicle.  *See Arizona v. Gant*, 556 U.S. 332, 344-45 (2009) (noting that the "State seriously undervalues the privacy interests at stake" in a person's automobile).  Although it is true that a "motorist's

---

[6] With no need to delve into the right or wrong of the politics, we can assume the limited development of this area of law is due to cases like Mr. Iraheta-Mercado's being historically resolved through administrative, not criminal, process.

privacy in his vehicle is less substantial than in his home, the former interest is nevertheless important and deserving of constitutional protection." *Id.* at 345; *see also New York v. Class*, 475 U.S. 106, 115 (1986) ("While the interior of an automobile is not subject to the same expectations of privacy that exist with respect to one's home, a car's interior *as a whole* is nonetheless subject to Fourth Amendment protection from unreasonable intrusions") (emph. added).

### IV.

As noted in this motion's summary, Mr. Iraheta-Mercado intends to argue, *inter alia*, that Officers Waite and Johnson exceeded the authority conferred by administrative warrant. These arguments present two issues for the jury's exclusive purview and resolution. First, Mr. Iraheta-Mercado had the right to defend himself from unlawful force by the officers. *See U.S. v. Span*, 970 F.2d 573, fn. 3 (9th Cir. 1992) ("Under the Fourth Amendment, an individual has the right to be free from the use of excessive force by a law enforcement officer even when that officer is making a lawful arrest"). Second, the defense has the right to argue that the officers exceeded their official duty when they intruded into the privacy of Mr. Iraheta-Mercado's vehicle cabin. *See Ninth Circuit Model Jury Instruction* 8.1. The first point raises a legal defense; the second point goes to an element of the alleged crime.

Part and parcel of the defense is that ICE's administrative warrant did not justify Officer Waite's physical intrusion into the car. The passenger compartment is a constitutionally protected space and therefore beyond the reach of a non-judicial warrant. *Class*, 475 U.S. at 115. An administrative warrant does not give officers authority to enter a house, even to grab a suspect a mere inch beyond the threshold. So, too, then, does the administrative warrant give officers no authority to enter the protected cabin area of a car. As Officer Waite's intrusion into the vehicle is what proximately started the sequence that led to the window pinning his arm, the jury must understand that his intrusion was not legal.

There was no other legal basis for Officer Waite to enter the car. Officer Johnson tries to suggest that Officer Waite reached into the car because Mr. Iraheta-Mercado "disregarded a lawful order to exit the vehicle." *See* Exhibit B. There are two legal problems with this.[7] First, the term "order" implies authority to compel compliance; an "order" without such compliance authority is merely a *request*. Counsel has found no authority that a DHS administrative warrant, as contrasted to a judicially issued warrant, compels an arrestee's compliance or provides exigent

---

[7] There is also a factual problem of whether Mr. Iraheta-Mercado even understood the officers' request, which was given only in English.

circumstances to enter the vehicle. *Contrast Shell Offshore v. Greenpeace, Inc.*, 815 F.3d 623, 628 (9th Cir. 2016) ("A court's contempt powers are broadly divided into two categories: civil contempt and criminal contempt"). Further reinforcing the difference, ICE policy explicitly states that "ERO law enforcement officers are not authorized to engage in vehicle pursuits." *See* Exhibit D, *Vehicle Stops* (redactions in original); *contrast Class*, 475 U.S. at 115 ("If respondent had remained in the car, the police would have been justified in asking him to move the papers obscuring the VIN […] *New York law authorizes a demand by officers to see the VIN*") (emphasis added). It is therefore legally incorrect to say that Mr. Iraheta-Mercado disregarded a lawful *order*. Absent a jury instruction on this point, the jury will be misled about Mr. Iraheta-Mercado's actions, and Mr. Iraheta-Mercado will be denied a constitutional defense.

To further support this point, Mr. Iraheta-Mercado's refusal to exit cannot be an "exigent circumstance" because the car is a constitutionally protected space. *See Florida v. Bostick*, 501 U.S. 429, 437 (1991) ("We have consistently held that a refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure"). In essence, this situation is no different than an immigration arrestee refusing to step outside of a home. DO Waite could *request* that Mr. Iraheta-Mercado exit, but Mr. Iraheta-Mercado was within his rights to say no.

1    In sum, Mr. Iraheta-Mercado had no legal obligation under federal law to exit his

2    constitutionally protected vehicle when agents possessed only an administrative

3    warrant. The jury must be so instructed in order to properly evaluate the parties'

4    conduct, burdens, and defenses. If the agents wanted more authority, they could have

5    attempted to secure a judicial warrant. *Cf. Mayorkas*, 734 F.Supp. 3d at 984.

6    ## V.    CONCLUSION AND RELIEF

7        In the end, this motion is about properly instructing the jury. This includes

8    properly instructing the jury on the government's burden and established defenses.

9    *See U.S. v. LaRizza*, 72 F.3d 775, 778 (9th Cir. 1995).

10       For the above reasons, the Court should enter conclusions of law regarding DO

11   Waite's and DO Johnson's specified actions. Thereafter, the Court should adopt the

12   proposed instructions to facilitate the jury's evaluation of the facts.

13   Dated: January 16, 2026

14                          Federal Defenders of Eastern Washington & Idaho
                            Attorneys for Hector Saul Iraheta-Mercado
15
                            s/Justin Lonergan
16                          Justin P. Lonergan, ISB 11161
                            601 W. Riverside Ave., 900
17                          Spokane, Washington 99201
                            t: (509) 624-7606
18                          f: (509) 747-3539

19

## Service Certificate

I certify that on January 16, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will notify Assistant United States Attorney Ann Wick.

s/Justin Lonergan
Justin P. Lonergan, ISB 11161
601 W. Riverside Ave., Ste. 900
Spokane, Washington 99201
t: (509) 624-7606
f: (509) 747-3539
Justin_Lonergan@fd.org